UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-60136-CIV-COHN/SELTZER

AMERISURE MUTUAL INSURANCE
COMPANY and AMERISURE
INSURANCE COMPANY,

    Plaintiffs,

v.

PLANTATION KEY OFFICE PARK, LLLP,
DOUGLAS DEVELOPMENT GROUP, INC.,
PASS INTERNATIONAL, INC. and
ZURICH AMERICAN INSURANCE COMPANY,

    Defendants.

_____/

## ORDER GRANTING MOTIONS TO DISMISS

**THIS CAUSE** is before the Court on Defendant Zurich American Insurance
Company's ("Zurich's") Motion to Dismiss, Abate, and/or Stay Plaintiffs' Amended
Complaint [DE 32] ("Zurich's Motion") and Defendants Douglas Development Group,
Inc.'s ("Douglas's") and Plantation Key Office Park LLLP's ("Plantation's") Motion to
Dismiss Amended Complaint for Declaratory Judgment [DE 34] ("Douglas and
Plantation's Motion") (together, "Motions").  The Court has reviewed both Motions,
Plaintiffs Amerisure Mutual Insurance Company and Amerisure Insurance Company's
(together, "Amerisure's") Response to Zurich's Motion [DE 37], Amerisure's Response
to Douglas and Plantation's Motion [DE 38], Zurich's Reply [DE 39], Douglas and
Plantation's Reply [DE 41], as well as  the record in this case, and is otherwise advised
in the premises.

## I. BACKGROUND

## A. Factual Background

Defendant Pass International, Inc. ("Pass") is a general contractor.  See Amended Complaint [DE 28] at ¶¶ 9-11.  Amerisure is an insurance company that insured Pass through a Commercial General Liability Policy ("CGL Policy") and an Umbrella Liability Insurance Policy ("Umbrella Policy") (together, "Policies").  Id. ¶¶ 9, 11; see also Exhibit A to Am. Compl., CGL Policy [DE 28-1]; Exhibit B to Am. Compl., Umbrella Policy [DE 28-2].

Amerisure's Policies insured Pass while it performed construction work for Plantation renovating certain buildings—Building Two and Building Three.  Id. ¶¶ 13-16. In the course of performing the construction work, Pass retained a subcontractor to perform roofing work and another subcontractor to install sprinkler systems.  See id. ¶¶ 20-21.  Plantation entered into a contract with Douglas for Douglas to coordinate and supervise Pass's work.  Id. ¶ 17.  Additionally, Zurich issued property insurance to Plantation and Douglas for Building Two and Building Three.  Id. ¶ 18.

On October 23, 2006, during the course of Pass's construction work, a fire destroyed Building Two and Building Three and damaged a third building, Building Five. Id. ¶ 19.  Plantation, Douglas, and Zurich allege that Pass and one of its roofing subcontractors caused the fire and that Pass's sprinkler system subcontractor contributed to the severity of the resulting damage by failing to perform its work properly.  Id. ¶¶ 20-21.

## B. State Court Lawsuits

On August 24, 2009, Plantation, Douglas, and Zurich sued Pass and its subcontractors in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County.  Douglas Dev. Group, Inc., et al. v. Pass Int'l, Inc., et al., Case No. 09-046725 (Fla. Cir. Ct.) ("State Court Action"); see also Exhibit A to Zurich's Mot., Complaint [DE 33-1]; see also Am. Compl. ¶¶ 22-23.  According to Douglas and Plantation, that case is set to go to trial in early 2012.  Douglas & Plantation's Mot. at 4.

Meanwhile, on December 10, 2010, Amerisure filed a declaratory action in state court.  Amerisure Mutual Ins. Co. v. Douglas Dev. Group, Inc., et al., Case No. 10-45796 (Fla. Cir. Ct.); see Exhibit I to Zurich's Mot., Complaint for Declaratory Judgment [DE 33-9].  According to Zurich, Amerisure voluntarily dismissed its state court declaratory action without prejudice on December 27, 2010.  See Zurich's Mot. at 5.

One month later, on January 24, 2011, Amerisure moved to intervene in the State Court Action.  Exhibit J to Zurich's Mot., Motion to Intervene [DE 33-10].  On March 4, 2011, the State Court Action judge, Judge John J. Murphy III, granted Amerisure's Motion to Intervene.  Exhibit 3 to Douglas & Plantation's Reply, Order Granting Motion to Intervene [DE 41 at 48].

## C. Federal Declaratory Action

Amerisure filed the instant Federal Declaratory Action on January 20, 2011.  See Compl.  On March 10, 2011, after Judge Murphy granted its request to intervene in the Sate Court Action, Amerisure filed its Amended Complaint.  See Am. Compl.  In the Amended Complaint, Amerisure alleges that there is a controversy as to whether

3

certain provisions in the Policies exclude coverage for the fire damages to Building Two and/or Building Three.  Id. ¶¶ 26-27.  The Amended Complaint requests a declaration as to "whether Amerisure Mutual has any liability under the [CGL Policy] and/or Amerisure Insurance has any liability under the Umbrella Policy for the subrogation claim of Zurich, and if so, the extent thereof along with such other and further relief as the nature of its cause may require."  Id. at 7.

On March 21, 2011, Zurich filed its Motion to Dismiss, Abate, and/or Stay.  See Zurich's Mot.  On March 24, 2011, Douglas and Plantation filed their Motion to Dismiss. See Douglas & Plantation's Mot.  Both Motions rest on arguments that this case is sufficiently similar to the State Court Action that the Court should exercise its discretion to refrain from deciding this case.  In response, Amerisure contends that this case is not sufficiently parallel to the State Court Action to merit abstention and that resolution of this Federal Declaratory Action will actually assist in the resolution of the state claims. For the reasons discussed below, the Court agrees with Zurich, Douglas, and Plantation that this action concerns some of the same issues already being litigated between the same parties in state court, and that upon balancing the state interests against the federal interests, the Court "might be indulging in 'gratuitous interference' if it permitted the federal declaratory action to proceed."  Wilton, 515 U.S. at 283 (citing Brillhart, 316 U.S. at 495).  Therefore, the Court will exercise its discretion and dismiss the Federal Declaratory Action in favor of the State Court Action.

## II. LEGAL STANDARD

The Declaratory Judgment Act is "an enabling Act, which confers a discretion on courts rather than an absolute right upon the litigant."  Wilton v. Seven Falls Co., 515 U.S. 277, 287 (1995).  "It only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so."  Ameritas Variable Life Ins. Co. v. Roach, 411 F.3d 1328, 1330 (11th Cir. 2005) (citing Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 494 (1942)).  The Supreme Court has cautioned that "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties."  Brillhart, 316 U.S. at 495. When a district court is confronted with such parallel proceedings, "it should ascertain whether the questions in controversy between the parties to the federal suit . . . can better be settled in the proceeding pending in the state court."  Id.  If so, the district court may exercise its discretion to dismiss the declaratory action in favor of the parallel state court action.  See Ameritas, 411 F.3d at 1332; see also Wilton, 515 U.S. at 286 (noting the continuing application of the Brillhart regime "under which district courts have substantial latitude in deciding whether to stay or to dismiss a declaratory judgment suit in light of pending state proceedings").

When a district court evaluates whether to dismiss a federal declaratory action in favor of a parallel state court action, the Eleventh Circuit, in Ameritas, 411 F.3d 1328, instructs that the district court should balance state and federal interests by considering the following factors:

(1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;

(2) whether the judgment in the federal declaratory action would settle the controversy;

(3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;

(4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing"—that is, to provide an arena for a race for res judicata or to achieve a federal hearing in a case otherwise not removable;

(5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;

(6) whether there is an alternative remedy that is better or more effective;

(7) whether the underlying factual issues are important to an informed resolution of the case;

(8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

Ameritas, 411 F.3d at 1331.  However, a court does not reach the Ameritas analysis unless it determines first that the parties and issues in the federal and state actions are sufficiently similar that they are parallel.  See, e.g., Auto-Owners Ins. Co. v. Emerald Star Casino & Resorts, Inc., Case No. 8:09-cv-1129-T-24 MAP, 2009 WL 3446745 (M.D. Fla. Oct. 21, 2009) (not reaching the Ameritas analysis because federal and state case were not sufficiently parallel).

6

**III. ANALYSIS**

Applying this legal standard to the instant case, the Court first evaluates whether the parties and issues are sufficiently similar in the Federal Declaratory Action and the State Court Action.  Second, after finding the two actions to be sufficiently similar, the Court evaluates the Ameritas factors to determine whether to dismiss the Federal Declaratory Action in favor of the State Court Action.

**A. Similarity Between the Cases**

Turning to the first step of the analysis, the Court notes that all parties in the Federal Declaratory Action are also parties in the State Court Action, and the two cases entail a number of overlapping issues.  Thus, the Court finds that the Federal Declaratory Action and the State Court Action are sufficiently parallel.

Specifically, the Amended Complaint requests declaratory relief as to the following exclusions:[1]

Damage to Property

Property damage to:
. . .

(5) **That particular part of real property** on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) **That particular part of any property** that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

CGL Policy at 4 of 15 (emphasis added); Umbrella Policy at 4 of 16 (emphasis added).

Determining coverage with respect to "that particular part" of property necessarily

---

[1]  These exclusions are identical in both Policies.  Am. Compl. ¶¶ 10, 12; see also CGL Policy; Umbrella Policy.

requires a determination of the particular part of property upon which Pass was performing its operations.  The language in these exclusions also requires a determination as to which buildings are covered by these provisions, as well as whether the property damage arose out of the operations Pass was performing and if so, how much property damage arose.  These are all factual matters at issue in the State Court Action.  See Exhibit F to Zurich's Mot., State Court Action Amended Complaint [DE 33-6].  Further, Amerisure requests a declaration as to the extent of any liability, see Am. Compl. ¶ 7, but to make such a declaration, the Court must know whether and to what extent Pass is liable in the State Court Action.  Once again, this matter is at issue in the State Court Action.

Despite these outstanding factual issues, Amerisure argues that the only facts necessary to support this Federal Declaratory Action are those alleged in the State Court Action Amended Complaint.  See Resp. to Zurich's Mot. at 3; Resp. to Douglas & Plantation's Mot. at 2.  Yet, "it is well-established law that the duty to indemnify the insured must be measured at the trial level; this duty is not determined by mere allegations but by the facts in the underlying tort action."  Penn Millers Ins. Co. v. AG-Mart Produce, Inc., Case No. 8:05-CV-1852-T-17TBM, 2006 WL 2864402, at *1 (M.D. Fla. Oct. 5, 2006) aff'd 260 Fed. App'x 175 (11th Cir. 2007).  Consequently, a decision regarding the extent of Amerisure's Policies' coverage is premature until the State Court Action resolves the factual disputes in the underlying claims.  See Penn Millers, 2006 WL 2864402, at *1 (noting, "deciding in Federal Court whether or not [the insurance company] has a duty to indemnify [the insured] for punitive damages in state court is akin to putting the judicial cart before the horse.").

8

Amerisure relies on three cases from other districts for the proposition that a declaratory action regarding insurance policy coverage is not parallel to a state court action involving a claim under that policy: Auto-Owners Ins. Co. v. Emerald Star Casino & Resorts, Inc., Case No. 8:09-cv-1129-T-24 MAP, 2009 WL 3446745 (M.D. Fla. Oct. 21, 2009); Northern Assurance Co. of America v. Custom Docks by Seamaster, Inc., Case No. 8:10-CV-1869-T-27MAP, 2011 WL 117046 (M.D. Fla. Jan. 13, 2011); and Essex Ins. Co. v. Foley, Case No. 10-0511-WS-M, 2011 WL 290423 (S.D. Ala. Jan. 27, 2011). See Resp. to Zurich's Mot. at 5-7, 7-9; Resp. to Douglas & Plantation's Mot. at 5-7, 8-10. In all three cases, an insurance company sought a declaration that it had no duty to defend or indemnify its insured in a related state court action. See Auto-Owners, 2009 WL 3446745, at *1; Northern Assurance, 2011 WL 117046, at *1; Essex, 2011 WL 290423, at *1. None of these cases reached the question whether the courts should dismiss the federal actions in favor of the state actions because the federal declaratory actions were not sufficiently parallel to the state court proceedings. Auto-Owners, 2009 WL 3446745, at *2; Northern Assurance, 2011 WL 117046, at *2; Essex, 2011 WL 290423, at *2. However, importantly, in Auto-Owners and Essex, the courts explicitly noted that the insurance companies were not parties to the underlying state court actions, Auto-Owners, 2009 WL 3446745, at *1; Essex, 2011 WL 290423, at *1, and in Northern Assurance, there was no indication in the court's opinion or in the record that the insurance company was a party in the state court action, see Northern Assurance, 2011 WL 117046, at **1, 2. In contrast, Amerisure, due to its own efforts to intervene, is a party in the pending State Court Action. Thus, though the insurance companies in Auto-Owners, Northern Assurance, and Essex would not have had any

9

other forum to settle their disputes if the federal cases were dismissed, Amerisure has a forum in which to argue its claims in the course of a proceeding that has been ongoing for almost two years.

Therefore, because the Federal Declaratory Action and the State Court Action entail the same parties and issues, the cases are sufficiently parallel actions.  Thus, the Court goes on to evaluate whether it should dismiss the instant Federal Declaratory Action in favor of the State Court Action.

### B. *Ameritas* Analysis

To determine whether to exercise jurisdiction over this case or to dismiss the matter in favor of the pending State Court Action, the Court balances the federal interests against the state interests under the nine factors set forth in Ameritas.  411 F.3d at 1331.  The Court keeps in mind that the "list [of factors] is neither absolute nor is any one factor controlling; these are merely guideposts in furtherance of the Supreme Court's admonitions in Brillhart and Wilton."  Id.

#### 1. The Strength of the State's Interest in Having the Issues Raised in the Federal Declaratory Action Decided in the State Courts

First, the state trial court has a strong interest in having the issues raised in this action decided in state court because Florida law governs those issues.  See Lincoln Benefit Life Co. v. Look, Case No. 2:05CV0353-FTM, 2006 WL 3734331, at *4 (Dec. 15, 2006) (applying first Ameritas factor and noting "Florida law governs the substantive issues in this case. Thus, the Court must conclude that Florida has a substantial stake in deciding the state law issues involved.").  Therefore, this factor weighs in favor of dismissal.

<u>2. Whether the Judgment in the Federal Declaratory</u>
<u>Action Would Settle the Controversy</u>

Second, the Federal Declaratory Action would not settle the controversy. Amerisure concedes as much when it suggests that "[i]f coverage is found, the underlying liability of Pass must still be proven in the State Action[, and] if coverage is not found, the Sate Action can continue against Pass with the clarity that no insurance coverage exists for any resulting damages that are found."  Resp. to Douglas & Plantation's Mot. at 10.  Further, there are parties in the State Court Action that are not parties here, so their claims cannot be settled here.  Therefore, this factor weighs in favor of dismissal.

<u>3. Whether the Federal Declaratory Action Would Serve a Useful</u>
<u>Purpose in Clarifying the Legal Relations at Issue</u>

Third, this Federal Declaratory Action would not necessarily serve a useful purpose in clarifying the legal relations at issue.  Where a "resolution of the declaratory judgment action may give rise to complex res judicata issues that would not serve to clarify the legal relations of the Parties[, . . . this] weighs in favor of dismissal."  <u>Royal Caribbean Cruises, Ltd. v. Whitefield ex rel. Martinez</u>, 664 F. Supp. 2d 1270, 1280-81 (S.D. Fla. 2009).  Because, as discussed above, this action depends on certain factual issues pending before the state court, resolving this action could possibly result in complex *res judicata* issues.  Therefore, if anything, this factor weighs in favor of dismissal.

11

### 4. Whether the Declaratory Remedy is Being Used Merely for the Purpose of "Procedural Fencing"—That is, to Provide an Arena for a Race for *Res Judicata* or to Achieve a Federal Hearing in a Case Otherwise Not Removable

Fourth, though not entirely clear, Amerisure's actions suggest that this case might have been filed for "procedural fencing" purposes. While the Court will not accept Douglas and Plantation's invitation to speculate as to Amerisure's intentions regarding filing this action "to force [the defendants] to expend additional and unnecessary time and legal fees defending this action," Douglas & Plantation's Mot. at 8, the Court does acknowledge that Amerisure first filed a declaratory action in state court, and then dismissed that action just before filing the instant action rather than continuing its state court declaratory action or raising its concerns in the pending State Court Action where it is already a party. Therefore, if anything, this factor weighs in favor of dismissal.

### 5. Whether the Use of a Declaratory Action Would Increase the Friction Between Our Federal and State Courts and Improperly Encroach on State Jurisdiction

Fifth, this Federal Declaratory Action would increase the friction between this Court and the state court and improperly encroach on the state court's jurisdiction. The State Court Action has been pending for almost two years and is set for trial in as soon as six months from now. This Court does not wish to encroach on the state court's jurisdiction. Therefore, this factor weighs in favor of dismissal.

### 6. Whether There is an Alternative Remedy That is Better or More Effective

Sixth, resolving all questions in the State Court Action is a more effective alternative remedy. Because the State Court Action has been pending for almost two years, the state court is already familiar with the facts and legal issues surrounding this

case.  Further, Pass's subcontractors are parties in the State Court Action, but not here. Finally, because Amerisure is a party in the State Court Action as well as this one, the state court has the opportunity to directly address the pending claims while also considering the coverage issue, and thus avoid piecemeal litigation.  See Look, 2006 WL 3734331, at *6 ("the presence of the claims against [the insurance company] in the state action weighs in favor of abstention, since abstention would provide the state court the opportunity directly to address those claims while also considering the coverage issue, thereby avoiding piecemeal litigation."); see also Royal Caribbean, 664 F. Supp. 2d at 1281 ("All the relief that Murillo Martinez seeks is available in state court. While Royal Carribean may believe that its rights will be better protected in federal court, this Court finds that, under the totality of the circumstances, resolution of all of Murillo Martinez's claims before a single fact finder is a remedy superior to the remedies available by permitting the federal declaratory judgment action to proceed while there is parallel state court litigation pending.").  Therefore, this factor weighs in favor of dismissal.

### 7. Whether the Underlying Factual Issues are Important to an Informed Resolution of the Case

Seventh, as more fully discussed above, the underlying factual issues are important to an informed resolution of the case.  See supra.  As Douglas and Plantation state, "[a] trial on any disputed issues of fact will take place in the State Court Action, where months of discovery have taken place and the State Court has jurisdiction over all parties involved in the circumstances underlying the fire and the resulting damage." Douglas & Plantation's Mot. at 10.  Therefore, this factor weighs in favor of dismissal.

### 8. Whether the State Trial Court is in a Better Position to Evaluate
### Those Factual Issues Than is the Federal Court

Eighth, at this time, the state court is in a better position to evaluate the underlying factual issues.  The State Court Action has been pending for almost two years.  The parties have produced thousands of pages of documents in discovery and have conducted countless hours of depositions.  The state court has set the trial for early 2012.  As the district court in Penn Millers stated when evaluating this eighth factor under similar circumstances, "since the trier of fact is presently the state court, then that is where all of the evidence, arguments, and testimony are currently being displayed . . . .  Now, if the federal court were to decide this issue of punitive damages and indemnification, it too would have to sit through a full trial to discover all of the facts that are based on this same evidence, arguments, and testimony.  This would essentially make the federal district court the trier of fact contemporaneously with state court for the same exact action, which doesn't exactly bode well for 'judicial economy.'"  Penn Millers, 2006 WL 2864402, at *2.  Therefore, this factor weighs in favor of dismissal.

### 9. Whether There is a Close Nexus Between the Underlying Factual
### and Legal Issues and State Law and/or Public Policy, or Whether
### Federal Common or Statutory Law Dictates a Resolution
### of the Declaratory Judgment Action

Ninth, and finally, there is a close nexus between the underlying factual and legal issues and state law and/or public policy.  There are no federal legal questions at issue in the Federal Declaratory Action or the State Court Action.  Therefore, this factor weighs in favor of dismissal.  See, e.g., Look, 2006 WL 3734331, at *6 (evaluating ninth Ameritas factor, finding, "This factor unambiguously weighs in favor of abstention,

because Lincoln Benefit's complaint raises state law issues exclusively and implicates state public policy, without any reference to federal common or statutory law.").

10. <em>Ameritas</em> Analysis Conclusion

In sum, the Ameritas factors strongly dictate that the Court should abstain from deciding this Federal Declaratory Action in favor of the pending State Court Action. See, e.g., Charles Sportfish Yachts, LLC v. Anderson, Case No. 10–60235–CIV, 2011 WL 1130951, *1 (S.D. Fla. March 25, 2011) (granting dismissal based on Ameritas factors when state court had strong interest in issues, declaratory judgment would not settle the full dispute, state court was in better position to evaluate facts because state action had been pending for several years, declaratory action would inconvenience parties based on duplicative discovery and extra travel away from the state court action county, ruling from federal court would act as <em>res judicata</em> to state court on that claim, and it would be inefficient and intrusive for federal court to adjudicate issues already being litigated in state court).  The Court refers Amerisure to the State Court Action to resolve its issues and clarify any questions on the Policies' coverage there.  If the State Court Action does not resolve these issues and a new federal cause of action is filed, the issues may be considered by a federal court at that time.  See Penn Millers, 2006 WL 2864402, at *3.

## IV. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED AND ADJUDGED** as follows:

1.     Defendant Zurich American Insurance Company's Motion to Dismiss, Abate, and/or Stay Plaintiff's Amended Complaint [DE 32] is **GRANTED**;

2.     Defendants Douglas Development Group, Inc.'s and Plantation Key Office Park LLLP's Motion to Dismiss Amended Complaint for Declaratory Judgment [DE 34] is **GRANTED**;

3.     The Amended Complaint [DE 28] is **DISMISSED without prejudice**;

4.     Any pending motions are **DENIED as moot**, and the Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 14th day of June, 2011.

JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF

16